UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYYA GRECHKO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CALISTOGA SPA, INC.,<br><br>Defendant. | Case No. 21-cv-06726-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Docket No. 20 |

Plaintiffs Mayya and Lyudmila Grechko bring this action against Defendant Calistoga Spa, Inc. alleging violations of the American with Disabilities Act ("ADA"), California Disabled Persons Act, and Unruh Civil Rights Act arising out of incidents connected to Plaintiffs' stay at Defendant's resort hotel. Now pending is Defendant's motion to dismiss Plaintiff's First Amended Complaint pursuant for lack of subject matter jurisdiction and failure to state a claim. Docket No. 20.

For the following reasons, the Court **GRANTS** Defendant's motion to dismiss for lack of subject matter jurisdiction.

## I.   BACKGROUND

A.   Relevant Factual Allegations

Plaintiff Mayya Grechko is 72 years old and alleges she is "diagnosed with chronic shoulder sprain, low back sprain, cervical sprain, degenerative disc disease, degenerative arthritis of wrists and thumbs and myofascial pain syndrome." Docket No. 18 ("FAC") ¶ 5. These conditions have limited her range of motion and cause her "non-stop pain in all four extremities." *Id.* Mayya alleges her pain increases at nighttime, which affects her ability to fall asleep and

causes her to wake up "about every twenty minutes to change the position of her arms and legs" to ease the pain. *Id.* Her conditions make it "impossible for her to share a bed with another person because any touching, however slight, not only wakes her up, but it also causes her excruciating pain." *Id.* Plaintiff Lyudmila Grechko, Mayya's daughter, suffers from injuries to her shoulders and from unsuccessful shoulder surgeries that limit her range of motion, cause continuing pain, and do not allow her to sleep on her side. *Id.* ¶ 6. As a result, Lyudmila alleges she is unable to share a bed with another person. *Id.*

In May and June 2021, Plaintiff Lyudmila made three different reservations – first, for a room with a king-sized bed, and, subsequently, in two different suites – at Defendant's resort hotel, located in Calistoga, CA. *Id.* ¶ 10. Each reservation was for two days and, together, spanned a six-day, continuous stay from June 27 to July 3, 2021. *Id.* Lyudmila made the reservations over the phone and requested a rollaway bed for each reservation so that she and her mother, Mayya, could sleep in separate beds. *Id.* ¶ 11.

On June 27, Plaintiffs checked in for their first reservation and were provided with a rollaway bed, as they had requested. *Id.* ¶ 12. On June 29, the day that Plaintiffs' first reservation ended and they were scheduled to move to their second reservation, one of Defendant's employees informed them that Plaintiffs did not have any further reservations at the hotel, that the suite that Lyudmila had reserved was reserved by another guest, and no other rooms were available. *Id.* ¶¶ 13-14. A manager seeking to find a solution to the situation followed up with Plaintiffs and offered them to stay an additional night in their first reservation, and then move directly to their third reservation the following day. *Id.* ¶ 15. Plaintiffs allege that this solution was less than ideal because they had added Lyudmila's children to the second and third reservations, which were suites, but that first reservation was for a single room. *Id.* Plaintiffs, however, accepted the offer. *Id.*

On June 30, Plaintiffs moved to their third reservation, a suite. *Id.* ¶ 16. Plaintiffs allege they did not find a rollaway bed in the suite, even though they had requested one when they initially made the reservation, so Lyudmila requested one at the hotel office. *Id.* The hotel employee allegedly informed Plaintiffs that a rollway bed was not available and the suite they had

2

reserved could not accommodate a rollaway bed. *Id.* Lyudmila explained that she had previously stayed at the hotel for years and "always" stayed in that same suite with her children on the sofa bed, Mayya on the regular bed, and herself on the rollaway bed. *Id.* Plaintiffs allege that Lyudmila provided "numerous explanations of the nature of her and [Mayya's] disability, and numerous requests for a reasonable accommodation." *Id.* But Defendant's employee allegedly continued to decline to provide a rollaway bed. *Id.* Plaintiffs allege that Lyudmila asked Defendant's employee "if she understood that she was refusing to accommodate disabled guests" and, in response, Defendant's employee "smiled back to Plaintiffs telling them that she understood that they had disabilities and she was denying the requested accommodation anyway." *Id.* ¶ 17.

Plaintiffs allege that due to "this intentional discrimination" they were forced to end their stay at the hotel three days early and suffered discomfort, humiliation and embarrassment. *Id.* ¶¶ 18-19. They allege that they would return to the hotel if Defendant were to make reasonable modifications to their policies and procedures to comply with the ADA and California law. *Id.* ¶ 20.

Plaintiffs allege violations of Title III of the Americans with Disabilities Act ("ADA") for Defendant's failure to modify existing policies and procedures (Count 1), California's Disabled Persons Act for denying Plaintiffs' right to full and equal access to accommodations due to their disabilities (Count 2), and California's Unruh Civil Rights Act (Count 3). Compl. ¶¶ 21-41. Plaintiffs seek injunctive relief directing Defendant to modify its policies and procedures, declaratory relief, damages (including statutory and treble damages) and costs and fees. *Id.* § Prayer for Relief.

B.    Procedural Background

Plaintiffs filed this action on August 30, 2021. Docket No. 1. Defendant moved to dismiss the case for failure to state a claim and lack of subject matter jurisdiction. Docket No. 12. In response, Plaintiffs timely filed an amended complaint. FAC. Now pending is Defendant's motion to dismiss Plaintiffs' first amended complaint for failure to state a claim and lack of subject matter jurisdiction. Docket No. 20 ("MTD").

At the January 13, 2022 hearing on this motion, the Court provided notice to the parties

1  that it would consider supplemental evidence as to the jurisdictional question of whether Plaintiffs
2  have standing to pursue injunctive relief under the Americans with Disability Act. *See* Docket No.
3  25.[1] The parties timely provided the Court with supplemental evidence for its consideration. *See*
4  Docket Nos. 26, 27.

## II. STANDARD OF REVIEW

A.  Lack of Subject Matter Jurisdiction/Standing (Rule 12(b)(1))

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo II*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A Rule 12(b)(1) jurisdictional attack may be factual or facial. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack," "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

---

[1] The Court initially stated its intent to convert this to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d) and provided the parties with the requisite notice and opportunity to supplement the record. Docket No. 25. However, because the Court limits its decision to subject matter jurisdiction, the motion and supplemental evidence is considered under Fed. R. Civ. P. 12(b)(1), which as explained below, permits consideration of evidence when the jurisdictional attack is factual. *See Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the court may consider "the complaint and any other particularized allegations of fact in affidavits or in amendments to the complaint").

1    favor, the court determines whether the allegations are sufficient as a legal matter to invoke the

2    court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

3       "[I]n a factual attack, the challenger disputes the truth of the allegations that, by

4    themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at

5    1038. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court

6    "may review evidence beyond the complaint without converting the motion to dismiss into a

7    motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of

8    the plaintiff's allegations." *Id.*

9       Either way, "it is within the trial court's power to allow or to require the plaintiff to supply,

10   by amendment to the complaint or by affidavits, further particularized allegations of fact deemed

11   supportive of plaintiff's standing." *Warth*, 422 U.S. at 501; *see also Table Bluff Reservation*

12   *(Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the

13   court may consider "the complaint and any other particularized allegations of fact in affidavits or

14   in amendments to the complaint").

### III.  DISCUSSION

16   Defendant argues that Plaintiffs lack standing to pursue their claim under Title III of the

17   ADA (Count 1), and, accordingly, the Court lacks subject matter jurisdiction over this action.

18   A.    <u>Standing to Pursue ADA Title III Claim</u>

19      Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards

20   addressing discrimination against individuals with disabilities...." 42 U.S.C. § 12101(b)(2). Title

21   III of the ADA prohibits discrimination by public accommodations, prescribing generally that

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

25   42 U.S.C. § 12182(a). To prevail on a discrimination claim under Title III, a plaintiff must show

26   that: (1) they are disabled within the meaning of the ADA; (2) the defendant is a private entity that

27   owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public

28   accommodations by the defendant because of their disability. *Arizona ex rel. Goddard v. Harkins*

United States District Court
Northern District of California

*Amusement Enterprises, Inc.*, 603 F.3d 666, 669–70 (9th Cir. 2010). Title 42 U.S.C. § 12182(b)(2)(A)(iii) provides that discrimination by public accommodations includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

"[A] disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). "'[T]o satisfy Article III's standing requirements, a plaintiff must show (1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Kirola v. City & Cty. of San Francisco,* 860 F.3d 1164, 1174 (9th Cir. 2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

The Court assumes without deciding that Plaintiffs have alleged facts sufficient to demonstrate injury-in-fact, traceability and redressability. The parties do not dispute that Title III does not provide a damages remedy. Instead, the only relief available for a violation is injunctive. Because injunctive relief is the only available remedy under Title III, a plaintiff claiming discrimination under Title III "must not only demonstrate the familiar requirements for standing—injury-in-fact, traceability, redressability—but also 'a sufficient likelihood that he [or she] will be wronged again in a similar way.'" *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) (quoting *Fortyune*, 364 F.3d at 1081). In other words, to establish standing for injunctive relief under Title III, Plaintiffs must face a "real and immediate threat of repeated injury." *Id.*

B.     Real and Immediate Threat of Repeated Injury

An ADA plaintiff establishes such a real and immediate threat if "he intends to return to a

noncompliant place of public accommodation where he will likely suffer repeated injury." *Chapman*, 631 F.3d at 948. A plaintiff may "demonstrate that [an] injury is likely to recur" by showing "that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001). "[W]here the harm alleged is directly traceable to a written policy. . . there is an implicit likelihood of its repetition in the immediate future." *Id.*

Alternatively, a plaintiff who "has visited a public accommodation on a prior occasion" demonstrates a real and immediate threat if he "is currently deterred from visiting that accommodation by accessibility barriers," such as an architectural barrier. *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury. . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)). The threat of a future injury, however, must be sufficiently "imminent" to permit a plaintiff to sue for injunctive relief. *See Doran*, 524 F.3d at 1040 ("Doran has suffered an injury that is concrete and particularized because he alleged in his amended complaint that he personally suffered discrimination as a result of the barriers in place during his visits to 7–Eleven and that those barriers have deterred him on at least four occasions from patronizing the store.").

Assuming Plaintiffs sufficiently allege they are deterred from visiting Defendant's hotel as a result of the alleged ADA violation, the allegations in the FAC do not plausibly demonstrate "a sufficient likelihood that [they] will be *wronged again in a similar way*." *Ervine*, 753 F.3d at 867 (emphasis added). Plaintiffs concede they have regularly stayed at this hotel and have never previously encountered an accessibility problem. In this instance, the denial was not based on an architectural or structural barrier. Instead, Plaintiffs allege that a single employee of Defendant's was responsible for denying their request for the reasonable accommodation of a rollaway bed. FAC ¶¶ 16, 17. Plaintiffs do not allege the existence of a written policy or procedure was the source of the denial of their accommodation request. *Cf. Davis*, 275 F.3d at 861 ("[W]here the

7

harm alleged is directly traceable to a written policy. . . there is an implicit likelihood of its repetition in the immediate future."). Indeed, Plaintiffs do not allege that the employee who denied their request for accommodation was a manager or otherwise held leadership authority that would make it likely for that person's decision-making to be repeated in the future.

In fact, to the contrary, Plaintiffs allege that they have visited the hotel for 24 years and *never* previously had their request for accommodation denied. *Id.* ¶ 11. Plaintiff Lyudmila Grechko submitted a supplemental declaration in response to the Court's request for additional jurisdictional facts, and confirmed that in all of the years that she has stayed at Defendant's hotel, including in the exact room in which Plaintiffs was scheduled to stay during the events that gave rise to this litigation, "[t]here was not a single occasion when [their] request for a rollaway bed . . . was denied." Docket No. 27 ("Grechko Decl.") ¶ 14. Plaintiffs further submitted a declaration by Elina Kagen, Plaintiff Lyudmila Grechko's sister, who declares that at Plaintiff's request, she successfully made a future reservation (for dates in February 2022) in the same suite Plaintiffs were scheduled to stay and obtained verbal confirmation from the hotel clerk that a rollaway bed would be provided in the room. Docket No. 27-2, Exh. E ("Kagen Decl.") ¶¶ 4-6.

The supplemental evidence that Plaintiffs have provided confirms that Plaintiffs' experience at the hotel on June 30, 2021 was an unfortunate one-off event, based on a lost reservation, the hotel being otherwise full, and staff person not willing to provide a rollaway bed, an event Plaintiffs have never previously encountered. Moreover, even if the fact that Plaintiff recently were able to make a reservation for the room with a rollaway were ignored, and it were assumed that Defendant has a firm policy of not placing a rollaway in this particular accessible queen suite, Defendant provides undisputed evidence that in the future, Plaintiffs can simply reserve other rooms that will accommodate the same size party. As Plaintiffs' harm on June 30, 2021 was not the result of a physical access barrier or systematic policy that is likely to hinder their ability to stay in a room that accommodates their needs, they have failed to demonstrate "a sufficient likelihood that [Plantiffs] will be wronged again in a similar way" or that they face a "real and immediate threat of repeated injury." *Ervine*, 753 F.3d at 867.

Therefore, Plaintiffs lack standing to pursue injunctive relief under Title III of the ADA.

8

1    Accordingly, the Court dismisses Plaintiff's ADA claim, Count 1, for lack of subject matter
2    jurisdiction.

3    C.     Leave to Amend

4    "[L]eave to amend should be granted if it appears at all possible that the plaintiff can
5    correct the defect." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (internal
6    quotation marks and citations omitted). However, where amendment would be futile to cure the
7    defects, the district court is not obligated to grant leave to amend. *Bonin v. Calderon*, 59 F.3d
8    815, 845 (9th Cir. 1995); *AmeriSourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th
9    Cir. 2006) ("[A] district court need not grant leave to amend where the amendment. . . is futile.").
10   Here, the Court provided Plaintiffs with notice that it was considering whether Plaintiffs had
11   standing to pursue their ADA claim, and allowed Plaintiffs fourteen days to supplement the record
12   with evidence of relevant jurisdictional facts that would establish standing. *See* Docket No. 25.
13   Plaintiffs responded with a 34-page submission of evidence, which included 9 exhibits. *See*
14   Docket No. 27. The evidence, if anything, support the Court's conclusion that Plaintiffs have not
15   demonstrated a likelihood of repeated injury as required to establish standing under Title III of the
16   ADA. In light of the opportunity afforded to Plaintiffs, the Court concludes any further
17   amendment to the ADA claim would be futile. Thus, the ADA claim, Count 1, is dismissed
18   without leave to amend.

19   D.     Supplemental Jurisdiction

20   "A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all
21   claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561
22   (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). Since the Court has no subject-matter
23   jurisdiction over Plaintiff's first claim under the ADA, the Court declines to exercise supplemental
24   jurisdiction over Plaintiff's state law claims under the Unruh Act and CDPA; the Court has not
25   addressed or adjudicated the merits of those claims. *See Oliver v. Ralph's Grocery Co*., 654 F.3d
26   903, 911 (9th Cir. 2011) (district court did not abuse its discretion by declining supplemental
27   jurisdiction over state law claims pursuant to § 1367(c)(3) when ADA claims had been dismissed).
28

### IV. CONCLUSION

Plaintiffs' claim under Title III of the ADA (Count 1) is dismissed with prejudice for lack of subject matter jurisdiction. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' First Amended Complaint in its entirety.

This order disposes of Docket No. 20.

The Clerk of the Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

Dated: February 1, 2022

_____
EDWARD M. CHEN
United States District Judge